## ST. LOUIS HOUSE AND WINDOW CLEANING COMPANY, Respondent, v. YORK REALTY COMPANY, Appellant.

**St. Louis Court of Appeals, November 23, 1915.**

1. **REFORMATION OF INSTRUMENTS: Effect on Third Parties.** Defendant corporation and plaintiff entered into a contract by which it was agreed that if defendant obtained the assignment of a lease of No. 312 North Seventh street and of a lease of Nos. 316 and 318 North Seventh street, prior to to a certain date, it would pay plaintiff a stipulated sum of money. Plaintiff procured a valid assignment of the lease of No. 312, and procured from the lessee of Nos. 316 and 318 an assignment of a lease of No. 312 (instead of Nos. 316 and 318). Within the stipulated time, plaintiff tendered to defendant an assignment of the lease of No. 312, and also an assignment of a lease of No. 312 (instead of Nos. 316 and 318). Defendant refused to receive the assignments, and, after the lapse of more than a year, plaintiff brought suit against the lessee of Nos. 316 and 318 to reform the assignment made by him, so as to correctly describe the premises as Nos. 316 and 318, instead of No. 312, and against defendant corporation to recover the agreed sum, after the instrument was thus reformed. *Held*, that, while the assignment could be reformed as against defendant assignor, it could not be reformed so as to enable plaintiff to recover the agreed sum from defendant corporation, since no effectual assignment of the lease was ever tendered to it within the time fixed by the contract, which was a condition precedent to such recovery.

2. ————: **Grounds of Refusal.** Reformation is not to be had when the instrument, as reformed, will be wholly ineffectual.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED.

*Eliot, Chaplin, Blayney & Bedal* and *Nagel & Kirby* for appellant.

(1). The jurisdiction of equity cannot be invoked to reform an instrument which has ceased to be operative, the voluntary reformation of which has never

been refused. Page on Contracts, sec. 1249; 34 Cyc. 946. (2) The jurisdiction of equity cannot be invoked, a year after the expiration of the contract sought to be enforced and of the lease sought to be assigned, to compel the acceptance of an assignment which is admittedly invalid unless and until reformed in the same suit. (3) Plaintiff, having purposely obstructed the performance of the condition of the contract on which its right to recover is based (namely, the "obtaining" of the Reilly and Menges leases by this defendant), until the value of these leases was destroyed, cannot invoke the aid of equity to compel defendant to accept confessedly worthless papers as substantial compliance with the condition of the contract. (4) A lease or "chattel real" being real estate within the meaning of the Statute on Conveyances, a corporation cannot make a valid conveyance thereof except by instrument under seal. Secs. 2790, 2822, R. S. 1909; Pullis v. Pullis, 157 Mo. 565; Orchard v. Store Co., 225 Mo. 414; Railroad v. Schweitzer, 246 Mo. 122.

*George B. Webster* for respondent.

(1) The court below did not err in decreeing reformation of the assignment, even though the leasehold term expired prior to the date of the decree. Quivey v. Baker, 37 Cal. 465; Waldron v. Letson, 15 N. J. Eq. 126; Parker v. Starr, 21 Neb. 680; Leitensdorfer v. Delphy, 15 Mo. 160; 2 Story, Eq. Jur. (3 Ed.), p. 1546. Where reformation is granted it relates back as of the date of the instrument reformed. Chapman v. Frelds, 70 Ala. 403; State v. Hall, 70 Miss. 678; Bronston v. Bronston, 141 Ky. 639; 4 Pomeroy Eq. Jur. (3 Ed.), sec. 1376. (2) Considering the assignments as reformed to meet the real intention of the parties, the plaintiff was entitled to recover, and the decree below was right. The word "obtain" means to "get by the efforts of others as well as by self-effort." Crabb,

Eng. Syn. (Harper Ed.), title "Acquire"; Webster, Dict. (Merriam Ed. 1886), title "Acquire." Where particular words of well-defined meaning are used in a contract the parties are presumed to have contracted in the light of that meaning, and the duty of the court is to ascertain and be guided by that meaning, rather than by the secret intent of one of them. I Greenleaf, Ev., sec. 277; Koehring v. Mumminghoff, 61 Mo. 407. This contract was drawn by the defendant's own counsel. A contract is to be construed most·strongly against the party who drew it. McManus v. Gregory, 16 Mo. App. 75; Belch v. Schott, 171 Mo. App. 357; Duryea v. New York, 62 N. Y. 592; Foternick v. Watson, 184 Mass. 187; Sinclair v. Surety Co., 132 Iowa, 549; Hardy v. Ward, 150 N. C. 385; Payne v. Neuval, 155 Cal. 46. (3) The contention that the plaintiff was not entitled to recover because it prevented the defendant from acquiring the leases is without merit. There is nothing in the record on which to found such an assertion. What evidence there is runs to the contrary. (4) The absence of the corporate seal on the assignments is immaterial. R. S. 1909, sec. 2782; Sanford v. Tremlett, 42 Mo. 384; Orchard v. Wright S. Co., 225 Mo. 417.

NORTONI, J.—This is a suit in equity by which the assignment of a lease is sought to be reformed on the grounds of mutual mistake. There are two defendants—that is, Charles Reilly, on account of whose mistake, co-operating with that of the plaintiff, the assignment is sought to be reformed, and the York Realty Company, to whom plaintiff sought to transfer the lease. The finding and decree were for plaintiff against both defendants, and the York Realty Company alone prosecutes the appeal.

It appears that defendant York Realty Company desired to erect what is now known as the Railway Exchange Building, covering the entire block bounded by

Olive, Locust, Sixth and Seventh streets in the city of St. Louis. In order to do this, it was essential to obtain possession of the several buildings in the block. Plaintiff, St. Louis House and Window Cleaning Company, owned an unexpired leasehold in and to the second, third and fourth floors of the building known as 622 Locust street, which lease expired December 31, 1911. Defendant Charles Reilly owned a leasehold at 316 and 318 North Seventh street, which, by its terms, expired December 29, 1911, and one Henry J. Menges owned a leasehold at No. 312 North Seventh street, expiring December 31 of the same year.

On February 20, 1911, defendant York Realty Company purchased from plaintiff, St. Louis House and Window Cleaning Company, its leasehold estate, and received an assignment of the lease from it accordingly. In connection with this purchase, and as the consideration therefor, defendant York Realty Company paid plaintiff $2500, and agreed to pay a further $2500 to it in event the leases of Menges, expiring December 31 of that year, and Reilly, December 29 of the same year, were obtained by it at any time prior to December 31. Defendant did not procure the assignment of the two leases mentioned, and plaintiff interested itself in that matter, to the end of collecting the additional $2500 above mentioned.

It appears that, on December 15, 1911, plaintiff procured a valid assignment of the lease of Henry J. Menges, covering 312 North Seventh street, and on the same day procured an ineffectual assignment of the lease from Charles Reilly, covering 316 and 318 North Seventh street. Thereafter, on the afternoon of December 28, one day before the expiration of the Reilly lease, and three days before the expiration of the Menges lease, plaintiff executed an assignment of the leases from it to the York Realty Company and tendered the same to defendant. Defendant declined to accept the assignment of the leases so tendered, but

gave no reason therefor. Subsequently it was discovered that the assignment of the Reilly lease to plaintiff was defective and wholly insufficient, in that, by it, Reilly merely purported to assign to plaintiff his right, title and interest in premises situate at 312 N. Seventh street, whereas his lease did not include that property, but covered solely 316 and 318 of that street. The assignment tendered by plaintiff to the York Realty Company was defective in the same respect, in that it, too, misdescribed the leasehold. About a year after the tender of this ineffectual assignment of the Reilly lease, plaintiff instituted this suit in equity against Charles Reilly and the York Realty Company, seeking the reformation of both the assignment of Reilly to it as of the date the insufficient assignment was executed—that is, December 15, 1911—and likewise a reformation of its own defective assignment theretofore tendered the York Realty Company, as of date December 28, and a recovery from defendant York Realty Company of the sum of $2500, on the theory that it had tendered to it an assignment of the Reilly lease within the terms of the contract of date February 20, 1911—that is, prior to December 31, 1911. The case concedes that the tender of a valid assignment of the Menges lease on December 28, 1911, was wholly ineffectual without a valid assignment of the lease of Reilly as well, for, indeed, the contract of February 20, 1911, on which defendant York Realty Company is pursued, relates to obtaining both leases prior to December 31, 1911. The case concedes, too, for the bill avers the fact to be, that the assignment of the Reilly lease to plaintiff, of December 15, 1911 was invalid and of no effect and also the attempted assignment of plaintiff to the York Realty Compay was likewise insufficient. Moreover, the only tender made to defendant York Realty Company of the two leases was of date December 28, 1911—that is, one day before the

Reilly lease expired and three days before the Menges lease expired—and such tender was ineffectual and of no avail, for that the Reilly lease had not theretofore been properly assigned to plaintiff, and, moreover, plaintiff's attempted assignment to defendant York Realty Company was defective, too.

This suit, as before stated, instituted more than a year after the two leases had expired, proceeds against defendant Reilly as for a reformation of the defective assignment, and against defendant York Realty Company for both a reformation of plaintiff's defective assignment to it and a money judgment of $2500 under its contract with plaintiff of date February 20, 1911, in the view that the court may validate the defective assignment of the Reilly lease through decreeing reformation as of date December 15, 1911 and a reformation, too, of plaintiff's defective assignment to the York Realty Company as of date December 28, 1911, and thus effectuate the tender of that lease made on December 28 of that year.

It is argued the relief may relate back and rectify the assignments of the lease as of the date they were attempted to be made, for that equity will treat that as done which should have been done. The proposition asserted may be well enough in so far as defendant Reilly is concerned; but though such be true as to Reilly, who abides the judgment and prosecutes no appeal therefrom, it is manifest that no pecuniary recovery against defendant York Realty Company may be had, for that no valid assignment of the lease was tendered to it within the time required by the contract of February 20, 1911—that is, prior to December 31, 1911. No grounds of reformation appear as to this defendant, for its obligation, if any, accrued under the contract of February 20, 1911, and not in virtue of the assignment of the lease tendered to it, which is conceded

to be defective and of no avail. It seems the York Realty Company is pursued to recover $2500 from it, in the view that a valid assignment of the Reilly lease was tendered to it, under the contract of February 20, 1911, on December 28 of that year—that is, one day before the Reilly lease expired and three days prior to the limitation prescribed in the contract of February 20.

Obviously the case is without equity as to the York Realty Company, for no right would accrue against it in favor of plaintiff except through compliance with the contract of February 20, 1911, which compliance it is conceded was not had as a matter of fact. This defendant was justified in declining to accept the lease, when, on December 28, 1911, the lease was tendered to it by plaintiff under the defective assignment from Reilly to plaintiff first and from plaintiff to it second, because, under those assignments, nothing was conveyed. This being true, defendant York Realty Company may not be put in the wrong by a court of equity more than a year afterwards, when it is conceded that the lease had expired in the meantime and it would receive nothing under assignments reformed as of the dates they were made though the defective tender was made to it one day before the lease expired. Although it be true that reformation may be decreed between the parties in mistake—that is, as between plaintiff and defendant Reilly—and that such reformation will relate back, if some property right inures to plaintiff thereunder, the principle is without avail here as against defendant York Realty Company, for in any view of the case the reformation would be ineffective to constitute a compliance with the requirements of its contract of date February 20, 1911, calling for an assignment of the lease prior to December 31 of that year.

It seems the theory of the bill misconceives the application of the principle which may be justly invoked against Reilly as for a reformation, in attempting to invoke it as well with respect to the York Realty Company in a suit proceeding against it in virtue of another and separate contract calling for performance by plaintiff within a specified time. Obviously these two defendants stand in a different attitude before the court. While it is competent for equity, acting on the principle that that should be treated as done which should have been done, to reform the defective assignment between the parties in mistake—that is, plaintiff and Reilly—it is not competent to put defendant York Realty Company in the wrong by granting the relief prayed through giving reformation against it, so as to invoke a separate and distinct contract for a pecuniary recovery on such reformed assignment of the lease, after the time the assignment was to be made in accordance with such separate and distinct contract had expired. Touching the rights of this defendant, the principle is rather to be applied to the effect that reformation is not to be had when the instrument, as reformed, will be wholly ineffectual. [See 2 Page on Contracts, section 1249.] The court, it is said, will not reform an instrument merely for the sake of reforming it, but only to enable the party to assert some right thereunder. [Thompson v. Phœnix Co., 25 Fed. 2961. See, also, 34 Cyc. 946.] In so far as defendant York Realty Company is concerned, the reformation of the assignment, decreed more than a year after the lease had expired, would be wholly inoperative and of no avail as a predicate for the assertion of a right against it, for its contract, of date February 20, 1911, which is invoked as a ground for pecuniary recovery, required an assignment of the lease to it not later than December 31, 1911. Such is the covenant calling for performance on the part of plaintiff toward defendant

York Realty Company, and it is obvious that a defective assignment of the lease from Reilly to plaintiff and a second defective assignment of the lease from plaintiff to it, made operative more than a year after the time of performance stipulated between the York Realty Company and plaintiff, may not be regarded as compliance with the provisions of that contract— that is, the contract of February 20, 1911, on which alone this defendant is pursued. In no view could such constitute a tender of a valid assignment within the time required by the separate contract of February 20, 1911, between plaintiff and this defendant. The York Realty Company appears to be pursued on no substantial ground and is made a party defendant through mere fiction.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.